# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FRANK L. JUDE, JR. and MARIA JUDE,<br>        Plaintiffs, | |
| v. | Case No. 06C1101 |
| CITY OF MILWAUKEE, et. al.,<br>        Defendants. | |
| KIRSTEN ANTONISSEN,<br>        Plaintiff, | |
| v. | Case No. 06C1103 |
| CITY OF MILWAUKEE, et al.,<br>        Defendants. | |
| KATIE BROWN,<br>        Plaintiff, | |
| v. | Case No. 06C1104 |
| CITY OF MILWAUKEE, et al.,<br>        Defendants. | |
| LOVELL A. HARRIS,<br>        Plaintiff, | |
| v. | Case No. 07C61 |
| POLICE OFFICER JON CLAUSING, et. al.,<br>        Defendants. | |

## DECISION AND ORDER

Plaintiffs brought the above-captioned consolidated actions under 42 U.S.C. § 1983. They allege that the individual defendants, all but one of whom were City of Milwaukee police officers during the relevant period, violated their constitutional, civil and common law rights. Plaintiffs also assert claims against the City. The City apparently declined to defend the individual defendants, thus certain of these defendants asked their homeowners insurers to defend them. The insurers, ACUITY, American Family Mutual

Insurance Company ("American Family"), Secura Supreme Insurance Company ("Secura") and Standard Fire Insurance Company ("Standard"), now move for summary judgment, arguing that they have no duty to defend or indemnify the defendant policy-holders.[1] In this decision, I address only their duty to defend.

## I.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). I must construe the evidence in the light most favorable to the non-movants and draw all reasonable inferences in their favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

All of the parties agree that the present summary judgment motions are governed by Wisconsin law regarding an insurer's duty to defend. The duty to defend is broader than the duty to indemnify. Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 834-35 (1993). In assessing whether the insurers have a duty to defend, I compare the allegations within the four corners of plaintiffs' complaints to the terms of the applicable insurance policies. Id. at 835. If a complaint contains allegations that if proven would be covered by the policy, the insurer has a duty to defend. Grube v. Daun, 173 Wis. 2d 30, 72 (Ct. App.1992). The existence of the duty has nothing to do with the merits of the claim. Sch. Dist. of Shorewood v. Wausau Ins. Cos., 170 Wis. 2d 347, 364 (1992). Moreover,

---

[1]Several defendants have also filed motions related to the filing of a sur-reply brief regarding the insurers' motions. I will grant such motions without further discussion.

2

"[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." Curtis-Universal, Inc. v. Sheboygan E.M.S., Inc., 43 F.3d 1119, 1122 (7th Cir. 1994). I resolve doubt about whether the complaint alleges covered conduct in favor of the insured. Gen. Cas. Co. of Wis. v. Hills, 209 Wis. 2d 167, 176 (1997). If the complaint alleges facts that are partially within and partially outside the scope of coverage, the insurer must defend the entire suit. See Curtis-Universal, 43 F.3d at 1122.

## II. ALLEGATIONS

Each of the complaints allege that in 2004, Frank Jude, Kirsten Antonissen, Katie Brown and Lovell Harris went together to a party at which the individual defendants (hereinafter, "defendants") injured them. The complaints allege that at the time that defendants injured plaintiffs, all defendants except for Michelle Bartlett were employed as police officers and were acting within the scope of their employment and under color of state law. I recount below the allegations of each complaint.

**A.     The Jude Complaint (06C1101)**

The Jude complaint alleges as follows: soon after arriving at the party, certain defendants made Jude uncomfortable and thus he, Harris, Antonissen and Brown attempted to leave. They got in Antonissen's vehicle, after which defendants identified themselves as police officers, accused them of stealing a police badge and other personal items, and told them to exit the truck or face arrest. Some defendants damaged the truck and forced Jude and Harris out. Michelle Bartlett slapped Jude and other defendants

3

accused him of theft, searched him and threw him to the ground. Some defendants threatened Jude with a knife and a gun, cut or tore his clothes off his body, punched and kicked him and called him racial epithets, while others "watched without intervening to stop or prevent the injuries or call for uniformed police officers or medical attention." (Jude Compl. ¶ 34.) At some point, uniformed officers arrived, including defendant Schabel, who handcuffed Jude and joined in the beating. A defendant jammed a pen into Jude's ears while others continued to punch and kick Jude though he was handcuffed. Still others continued to watch without intervening. Some defendants vandalized Jude's car and damaged its contents. Defendants took all of these actions in the course of investigating a theft and effectuating an illegal arrest, and in doing so acted in a "common scheme or plan to deprive [Jude] . . . of his constitutional and civil rights," (id. ¶ 43).

The Jude complaint states that defendants' conduct violated § 1983 and constituted assault and battery. With reference both to the § 1983 claims and the assault and battery claims, the complaint alleges that defendants' conduct was "unlawful, extreme, malicious, outrageous and/or intentional," and that defendants "acted with an evil motive or intent, acted maliciously, and/or with reckless disregard, and/or with deliberate indifference, and/or with a reckless or callous indifference toward . . . Jude . . . or in an intentional disregard of his civil rights." (Id. ¶¶ 56, 58, 90, 92.) The complaint describes numerous physical and property injuries caused by defendants' conduct.

## B.     The Antonissen and Brown Complaints (06C1103 and 06C1104)

The Antonissen and Brown complaints are identical to one another and generally track the Jude complaint. They allege as follows: after defendants damaged Antonissen's vehicle, Antonissen and Brown exited the vehicle. Some defendants illegally detained and

4

searched Antonissen and Brown, accused them of stealing a badge, unlawfully restrained them and forced them to witness other defendants beating Jude and/or failing to intervene to stop the beating of Jude. Some defendants also illegally searched Antonissen's truck. Defendants took these actions in a "common scheme or plan to deprive [Antonissen and Brown] of their constitutional and civil rights." (Antonissen Compl. ¶ 34; Brown Compl. ¶ 34.)

The Antonissen and Brown complaints assert that defendants' conduct violated § 1983 and constituted assault and battery, describing the applicability of such laws the same as the Jude complaint. The Antonissen and Brown complaints further state that defendants' conduct amounted to negligent infliction of severe emotional distress, civil conspiracy and false imprisonment.

**C.      The Harris Complaint (07C61)**

The Harris complaint opens with a similar description of arriving at the party and attempting to leave. It continues as follows: after defendants damaged Antonissen's vehicle, they forced Harris from the truck, arrested him, shouted racial slurs at him and told him to put his hands behind his back and sit on a curb. Clausing "pulled out a knife and cut . . . Harris along his cheek, from his eye to his ear," (Harris Compl. ¶ 17), after which Harris broke free. Officers later picked up Harris and returned him to the scene of the party where defendants "conspired to falsely arrest plaintiff and took him in police custody to St. Francis Hospital for medical treatment," where he was "subjected to false imprisonment and police interrogation while being treated for his injuries." (Id. ¶ 19.) Defendants transported Harris to the police station, continued to interrogate him about the alleged theft and then jailed him for two days. Throughout the incident, defendants "operated under

5

color of law, by stating that they had a badge, placing plaintiff under arrest, using police procedures such as having plaintiff put his hands behind his back, and referring to themselves as police officers." (Id. ¶ 20.)

The Harris complaint states that defendants violated § 1983 by "negligently and intentionally" seizing, assaulting, battering, arresting, imprisoning, abusing and harassing him, and using excessive force in doing so. (Id. ¶ 26). It further states that defendants violated state laws prohibiting assault, battery and false imprisonment and requiring police to protect the public; defendants acted either directly or "by either acting in concert and aiding and abetting the actual assailants or by failing to act to protect" his rights; and defendants unlawfully maintained a "'blue line' or police code of silence" after the incident. (Id. ¶¶ 32-33).

### III. DISCUSSION

ACUITY seeks a declaration that it has no duty to defend defendant Ryan Packard; American Family seeks a declaration that it has no duty to defend defendants Ryan Lemke, Joseph Schabel or Andrew Spengler; Secura seeks a declaration that it has no duty to defend defendant Daniel Masarik; and Standard seeks a declaration that it has no duty to defend defendant Jon Clausing. Defendants Lemke and Schabel failed to respond to American Family's motion and thus concede that it has no duty to defend them. I now turn to the application of the complaints' allegations to the insurance policies of Spengler, Masarik, Packard and Clausing (hereinafter, together, the "insureds").

Insurance policies are governed by the same rules of construction applicable to other contracts. Sprangers v. Greatway Ins. Co., 182 Wis. 2d 521, 536 (1994). I seek to ascertain the intent of the parties with respect to coverage. Limpert v. Smith, 56 Wis. 2d

6

632, 640 (1973). I interpret policy language as would a reasonable person in the insured's position. Gen. Cas. Co. of Wis., 209 Wis. 2d at 175. If the language of the policy is clear and unambiguous, I give the language its plain meaning. Id. If it is ambiguous, I resolve the ambiguity in the insured's favor. Smith v. Atl. Mut. Ins. Co., 155 Wis. 2d 808, 811 (1990). However, I may not rewrite a policy to bind an insurer to a risk it never contemplated and for which it did not receive premiums. City of Edgerton v. Gen. Cas. Co. of Wis., 184 Wis. 2d 750, 780-81 (1994). Whether a contract is ambiguous is a question of law. Golden Valley Supply Co. v. Am. Ins. Co., 195 Wis. 2d 866, 878 (Ct. App. 1995). The insured has the burden of establishing coverage. Just v. Land Reclamation, Ltd., 151 Wis. 2d 593, 605 (Ct. App. 1989), rev'd on other grounds, 155 Wis. 2d 737 (1990). If the insurer relies on an exclusion to deny coverage, it has the burden of establishing that the exclusion applies. Id.

**A.   Coverage**

Each of the insureds' policies provides coverage for compensatory "damages" for which the insured is liable "because of bodily injury or property damage caused by an occurrence." (Johnson Aff. Ex. A at Policy 14 (Packard's ACUITY policy); Booth Aff. Ex. A at Policy 9 (Spengler's American Family policy); Pytlik Aff. Ex. A at Policy 34 (Masarik's Secura policy); Vescio Aff. Ex. 1 at SF 14 (Clausing's Standard policy).) Each complaint seeks compensatory damages and alleges bodily injury,[2] and the Jude and Antonissen

---

[2] There is some variation among the policies' definitions of bodily injury. Spengler's American Family policy definition excludes emotional distress unrelated to physical injury and Masarik's Secura policy definition adds additional types of injury. I am satisfied that each of the complaints could reasonably be interpreted as alleging some physical injury and thus they each allege injuries that fall within all of the policies' definitions of bodily injury.

7

complaints also allege property damage. However, the insurers contend that the complaints fail to allege an occurrence. The policies define an occurrence, for relevant purposes, as an "accident" that results in bodily injury or property damage. (Johnson Aff. Ex. A at Policy 15; Booth Aff. Ex. A at Policy 1; Pytlik Aff. Ex. A at Policy 1; Vescio Aff. Ex. 1 at SF 19.) As part of a "value-added package," Clausing's Standard policy alternatively defines occurrence as an "offense[ ] which result[s] . . . in personal injury," i.e., "injury arising out of . . . (a) False arrest, detention or imprisonment; (b) Malicious prosecution; (c) Libel, slander, or defamation of character; or (d) Invasion of privacy, wrongful eviction, or wrongful entry." (Vescio Aff. Ex. 1 at SF 43.) All the complaints allege injuries caused by actions arguably amounting to false arrest and detention; such injuries are plainly covered by the value-added section of Clausing's policy.

Turning to the policies' common definition of an occurrence as an accident, an accident is an injurious event that occurs by chance. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 268 Wis. 2d 16, 39 (2004) (citing Webster's Third New International Dictionary of the English Language 11 (2002) and Black's Law Dictionary 15 (7th ed. 1999)). The word accident refers to the injurious event itself, not the resulting injury. Id. (citing Black's Law Dictionary at 15). An accident is "characterized by lack of intention." Everson v. Lorenz, 280 Wis. 2d 1, 12 (2005) (quoting Doyle v. Engelke, 219 Wis. 2d 277, 289 (1998)). Where the event involves a "volitional act," it cannot be called an accident. Id. at 15; see also Am. Girl, Inc., 268 Wis. 2d at 43 (quoting Kalchthaler v. Keller Constr. Co., 224 Wis. 2d 387, 395 (Ct. App. 1999) for the proposition that "an accident is an 'event or change occurring without intention or volition through carelessness, unawareness, ignorance, or a combination of causes.'").

While conceding that plaintiffs primarily allege intentional acts, the insureds note that they also allege that some defendants failed to act, which the insureds characterize as accidental. I disagree with this characterization. Plaintiffs' allege that their injuries were caused, in part, by the failure of certain defendants to intervene when others used force against Jude and Harris. (See, e.g., Jude Compl. ¶ 52; Antonissen Compl. ¶ 41; Brown Compl. ¶ 41; Harris Compl. ¶ 22.) Plaintiffs allege that the active defendants' use of force, including use of weapons, was plainly excessive, and – by alleging a violation of § 1983 – that the failure-to-intervene defendants knew that the force was excessive and had a reasonable opportunity to intervene but failed to do so. See Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). Further, plaintiffs allege that all of the defendants, active and inactive, conspired with one another to deprive plaintiffs of their rights. (Jude Compl. ¶ 43; Antonissen Compl. ¶ 34; Brown Compl. ¶ 34; Harris Compl. ¶ 19.) As such, plaintiffs clearly indicate that the failure-to-intervene defendants took a "volitional" injurious act – they made a decision to participate in the conspiracy and to not intervene. See Everson, 280 Wis. 2d at 14. This is inconsistent with the term "accident" as it would be understood by a reasonable person in the insureds' position. See Everson, 280 Wis. 2d at 14; Gen. Cas. Co. of Wis., 209 Wis. 2d at 175. In fact, "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that he or she was paying for coverage" for a failure to intervene such as that alleged here. See Haessly v. Germantown Mut. Ins. Co., 213 Wis. 2d 108, 119 (Ct. App. 1997).

The fact that the Antonissen, Brown and Harris complaints characterize defendants' conduct as "negligent" does not compel a different conclusion. As stated, I must examine whether plaintiffs' factual allegations, not their legal theories, allege covered conduct. See

9

Curtis-Universal, 43 F.3d at 1122; Fernandez v. Strand, 63 F. Supp. 2d 949, 956-57 (E.D. Wis. 1999). In support of their claims of negligent infliction of severe emotional distress, the Antonissen and Brown complaints allege that defendants acted negligently "by engaging in the conduct which is the subject of this lawsuit." (Antonissen Compl. ¶ 62; Brown Compl. ¶ 62.) As indicated, such conduct can only be described as intentional. Just as a claim for negligent infliction of emotional distress based on allegations of sexual molestation does not refer to an accident, Fernandez, 63 F. Supp. 2d at 956; C.L. v. Sch. Dist. of Menomonee Falls, 221 Wis. 2d 692, 702 (Ct. App. 1998), and a claim for negligent misrepresentation does not refer to an accident, Everson, 280 Wis. 2d at 15-16, Antonissen's and Brown's negligence claims do not refer to an accident.

The Harris complaint contains two references to negligence. First, it alleges that defendants "negligently" seized Harris, assaulted and battered him, falsely arrested and imprisoned him, used excessive force in arresting him, and verbally abused and harassed him. (Harris Compl. ¶ 26.) These allegations present a series of oxymorons and clearly refer only to intentional acts. See C.L., 221 Wis. 2d at 702 (stating that "'negligent sexual molestation' is really an oxymoron"). Second, Harris refers to the officers' failure to protect him and their refusal to truthfully participate in the investigation of the incident as "negligence." (Id. ¶ 33.) Again, the acts that Harris alleges in support of his failure-to-intervene claims can only be characterized as intentional. Further, I cannot conceive of any reasonable interpretation of a police cover-up as accidental. As such, it is clear that Harris' use of the word negligence does not alter my analysis. See Fernandez, 63 F. Supp. 2d at 956; Everson, 280 Wis. 2d at 15-16; C.L., 221 Wis. 2d at 702.

In any event, because each complaint alleges that defendants' duty to intervene arose out of their role as police officers and that defendants were acting within the scope of their employment as police officers throughout the relevant period, (Jude Compl. ¶¶ 9-15, 36; Antonissen Compl. ¶¶ 6-12, 28; Brown Compl. ¶¶ 6-12, 28; Harris Compl. ¶¶ 4-10, 33), any liability arising from a violation of the duty to intervene would clearly fall within the policies' exclusions for liability for injuries arising out of the insureds' business pursuits, (see Johnson Aff. Ex. A at Policy 16; Booth Aff. Ex. A at Policy 11; Pytlik Aff. Ex. A at Policy 35; Vescio Aff. Ex. 1 at SF 33).

**B.     Exclusions**

I turn now to whether the allegations of false arrest and imprisonment that I earlier concluded were within Clausing's value-added coverage are also within any of the policy exclusions to such coverage. Standard points out that the package excludes personal injury "arising out of the business of any insured" and personal injury "caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured," (Vescio Aff. Ex. 1 at SF 45), and argues that both exclusions apply. I conclude that the business exclusion applies and need not address the penal law exclusion.

There is no dispute that during the period described in the complaints, Clausing was employed as a police officer. The question is whether plaintiffs' alleged injuries caused by Clausing's false arrest and imprisonment of them arose out of such employment. I conclude that the complaints unambiguously allege that they did arise out of his employment. Each complaint repeatedly alleges that Clausing was employed as an officer and that he arrested and detained plaintiffs while acting as an officer. (Jude Compl. ¶¶ 14, 39, 53; Antonissen Compl. ¶¶ 11, 37, 42, 67, 70; Brown Compl. ¶¶ 11, 37, 42, 67, 70;

11

Harris Compl. ¶¶ 4, 20, 24.) The complaints do not specify whether Clausing was on duty, but this distinction is not dispositive of the applicability of the business exclusion. See Am. Fam. Mut. Ins. Co. v. Nickerson, 657 F. Supp. 2, 5 (E.D. Mo. 1986). Further, while Wisconsin recognizes an exception to a business exclusion for activities conducted in the course of business but constituting a usual nonbusiness pursuit, see Rufener v. State Farm Fire & Cas. Co., 221 Wis. 2d 500, 509-10 (Ct. App. 1998), arresting and detaining people is not a usual nonbusiness pursuit for a police officer. The duty to defend is determined solely by allegations in the complaint, Doyle, 219 Wis. 2d at 285 n.3, and is unaffected by an insured's belief that the complaint is mistaken, see Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co., No. 06-3365, 2007 U.S. App. LEXIS 21159, at *17 (7th Cir. Sept. 5, 2007). Given that the complaints unambiguously allege only facts that fall within Clausing's policy's business exclusion, they do not give rise to a duty to defend.

Clausing expresses frustration that the City has refused to defend him on the ground that he was not acting within the scope of his employment while Standard has refused to defend him on the ground that his actions arose from his employment and asserts that both cannot be correct. However, the City's duty depends on its arrangement with Clausing, not on the Standard policy. No officer has argued that the City or its insurer has a duty to defend, and that question is not before me.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that Andrew Spengler's and Ryan Packard's motion to file a sur-reply brief is **GRANTED**.

**IT IS FURTHER ORDERED** that Jon Clausing's motion to join in the sur-reply brief is **GRANTED**.

**IT IS FURTHER ORDERED** that ACUITY's motion for summary judgment is **GRANTED** with respect to its duty to defend Ryan Packard.

**IT IS FURTHER ORDERED** that American Family Mutual Insurance Company's motion for summary judgment is **GRANTED** with respect to its duty to defend Ryan Lemke, Joseph Schabel and Andrew Spengler.

**IT IS FURTHER ORDERED** that Secura Supreme Insurance Company's motion for summary judgment is **GRANTED** with respect to its duty to defend Daniel Masarik

**IT IS FURTHER ORDERED** that Standard Fire Insurance Company's motion for summary judgment is **GRANTED** with respect to its duty to defend Jon Clausing.

**IT IS FURTHER ORDERED** that ACUITY, American Family, Secura and Standard are hereby **DISMISSED FROM THIS ACTION**.

Dated at Milwaukee, Wisconsin this 26 day of October, 2007.

/s_____
LYNN ADELMAN
District Judge