1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE EASTERN DISTRICT OF WISCONSIN

3    ------------------------------------------------------------

4    FRANK L. JUDE, JR.,                          )   CASE NO.

5                              Plaintiff,    )   06-C-1101

6        v.                                      )

7    CITY OF MILWAUKEE, et al.,                   )

8                              Defendants.   )

9    ------------------------------------------------------------

10

11

12                    HONORABLE LYNN ADELMAN

13                 PRESIDING DISTRICT COURT JUDGE

14

15

16   MILWAUKEE, WISCONSIN                        AUGUST 19, 2009

17

18                    PARTIAL STATUS CONFERENCE

19              HELD IN THE ABOVE-ENTITLED MATTER

20

21

22

23                   CYNTHIA M. BOHMAN, RMR
                Official United States Court Reporter
24              517 E. Wisconsin Avenue, Room 208
                     Milwaukee, WI 53202
25                     414-852-5482

```
1   APPEARANCES:

2
            JONATHAN S. SAFRAN
3           JEFFREY PATZA
            Samster, Konkel & Safran
4           1110 N. Old World 3rd St.
            Milwaukee, WI 53203
5           appearing for Frank Jude.

6
            MIRIAM R. HORWITZ
7           Milwaukee City Attorney's Office
            200 E. Wells St.
8           Milwaukee, WI 53202
            appearing for the City of Milwaukee.
9
            MICHAEL A. I. WHITCOMB
10          Michael A.I. Whitcomb, SC
            633 W. Wisconsin Ave.
11          Milwaukee, WI 53203
            appearing for Daniel Masarik.
12
13          DAVID P. GERAGHTY
            Darnieder & Geraghty
14          735 N. Water St.
            Milwaukee, WI 53202
15          appearing for Ryan Lemke.

16
            RAYMOND M. DALL'OSTO
17          Gimbel, Reilly, Guerin & Brown
            330 E. Kilbourn Ave.
18          Milwaukee, WI 53202
            appearing for Jon Clausing.
19
20          JOHN S. SCHIRO
            Schiro & Zarzynski
21          735 W. Wisconsin Ave.
            Milwaukee, WI 53233
22          appearing for Joseph Schabel.

23

24

25
```

1          P R O C E E D I N G S

2                  *   *   *

3          THE COURT:  All right.  I'm prepared to rule on those

4    if you want me to.  So let's start with the motion to compel

5    deposition from Officer Blum, is it?  Is that how you pronounce

6    it?

7          MR. SAFRAN:  I believe so, yes.

8          THE COURT:  All right.  Blum has asserted his Fifth

9    Amendment privilege in response to all deposition questions

10   other than his name.  I'm glad that's not in controversy.

11         The plaintiff wants to compel his testimony on ten

12   topics, deposition preparation, background, employment history,

13   assault and battery of Jude, his observations of that night,

14   actions of other police officers that night, his actions that

15   night, policies, practices and customs of the city with respect

16   to hiring, training, et cetera, the alleged code of silence,

17   and thin blue line within the police department, and the

18   alleged group within the police department known as the

19   Punishers.

20         The Fifth Amendment allows witnesses to refuse to

21   answer questions on the ground that the answers might be

22   incriminating or would furnish a link in the chain of evidence

23   needed for conviction of a crime.  Hoffman, H-o-f-f-m-a-n,

24   versus United States, 341 U.S. 479, at 486, 1951.

25         The privilege doesn't allow a witness to refuse to

1  answer a question merely because he declares that the answer

2  would be incriminating.  Rather, the privilege is confined to

3  instances, "Where the witness has reasonable cause to apprehend

4  danger from a direct answer."  That's from Hoffman.

5          It's for the Court to decide whether an assertion of

6  privilege is justified and to compel the witness to answer, "If

7  it clearly appears to the court that he's mistaken."  But a

8  witness's constitutional privilege against self-incrimination

9  doesn't depend upon a judge's prediction of the likelihood of

10  prosecution.  Rather, it's only when there is but a fanciful

11  possibility of prosection that a claim of Fifth Amendment

12  privilege is not well taken.

13          In re Folding Carton Antitrust Litigation, 609 F. 2d

14  867, at 871, Seventh Circuit, 1979.  Therefore, when a witness

15  can demonstrate any possibility of prosecution which is more

16  than fanciful he has demonstrated a reasonable fear of

17  prosecution sufficient to meet constitutional muster.  This

18  standard will be met where prosecution remains possible even if

19  it is unlikely that a prosecutor will decide to actually bring

20  charges.  Id. at 872.

21          In the present case Blum's fear of prosecution is more

22  than fanciful.  The statutes of limitation for potential state

23  and federal charges have not expired and neither the United

24  States nor the state has granted him immunity.

25          Further, I find that he has a reasonable fear that

1  most of the topics that plaintiff wants to cover in his

2  deposition could lead to self-incrimination.  Questions about

3  his actions and observations on the night of October 23rd -

4  24th, 2004 could result in incriminating answers, and questions

5  about the actions of other officers at the scene could result

6  in answers that implicate Blum as a member of a criminal

7  conspiracy or answers that lead to criminal liability as a

8  party to a crime.

9      The statement is true for questions about the alleged

10  code of silence, thin blue line and or the Punishers.

11      Therefore, Blum can assert the privilege with respect

12  to questions on these topics.

13      However, Blum concedes that questions about the

14  policies, practices and customs of the City of Milwaukee with

15  respect to the hiring, training, supervision and discipline of

16  police officers are not reasonably likely to result in

17  self-incrimination and, therefore, he must answer questions on

18  these topics.

19      Further, it's not reasonably likely that Blum will

20  either incriminate himself or furnish a link in a chain of

21  incriminating evidence if he answers questions about his

22  deposition preparation, his background or his employment as a

23  police officer for the city before the month of October 2004.

24  Therefore, he is compelled to answer questions on these topics.

25      Finally, I note that plaintiff suggests that Blum

1 | waived the privilege by testifying about the events that

2 | occurred on the night of October 23rd - 24th, 2004 at earlier

3 | proceedings, such as the criminal trial of other officers and

4 | at his own hearing before the Fire and Police Commission.

5 | However, a waiver of the Fifth Amendment privilege applies only

6 | within the context of the proceeding in which the waiver was

7 | made.

8 | See McCormick on Evidence, Section 133. The criminal

9 | trial and the hearing before the Fire and Police Commission

10 | were separate proceedings. And although Blum may have waived

11 | the privilege during those proceedings, he has not waived it

12 | for purposes of the present case.

13 | Therefore, plaintiff's motion to compel Blum's

14 | testimony is granted in part and denied in part as discussed

15 | above.

16 | The parties' request for costs and fees pursuant to

17 | Rule 37 are denied because both parties' respective positions

18 | were substantially justified.

19 | All right. I've already dealt with the Bartlett

20 | issue. And now on the protective order about the city, I'm

21 | ready to rule on that unless anybody wants to add anything.

22 | MR. SAFRAN: Nothing from the plaintiff, Your Honor.

23 | MS. HORWITZ: I think it's been adequately briefed,

24 | Your Honor.

25 | THE COURT: Okay. So on that plaintiff seeks a

1  protective order to prevent the city from asking him in his

2  deposition about topics that in plaintiff's view are not

3  relevant to the case and are embarrassing, including, One,

4  marital relationship between plaintiff and his ex-wife,

5  including their divorce; Two, details surrounding plaintiff's

6  convictions; Three, allegations of criminal conduct against

7  plaintiff; Four, plaintiff's incarceration and parole; and,

8  Five, plaintiff's relationship and contacts with other members

9  of his family.

10          The city argues that questions about these matters are

11  relevant or at the least are reasonably calculated to lead to

12  the discovery of admissible evidence because they go to the

13  issue of damages.  Plaintiff seeks damages for past and future

14  loss of earnings, past and future medical expenses, past and

15  future pain and suffering.

16          The city argues that the facts and circumstances

17  surrounding his criminal convictions, parole revocations and

18  family relationships might be relevant to earning capacity and

19  that they might lead to discovery of evidence relevant to his

20  claim or to plaintiff's claim that the events of October 23rd -

21  24th have resulted in depression and post traumatic stress

22  disorder.  Plaintiff argues that none of this evidence will be

23  admissible under the Federal Rules of Evidence and that,

24  therefore, the discovery is not relevant.

25          However, whether evidence will be admissible cannot be

1    determined until after the record has been fully developed.

2         Further, although the evidence may not be generally

3    admissible events that unfold at trial might make it

4    admissible.  For example, plaintiff might through his testimony

5    open the door to evidence that would normally be inadmissible.

6    And in any case, the Rules of Civil Procedure contemplate

7    liberal discovery.

8         And I find that the city's questions are reasonably

9    calculated to lead to the discovery of admissible evidence and

10   that they are not designated to harass or embarrass plaintiff

11   or impose an undue burden on him.

12        Therefore, plaintiff's motion for a protective order

13   is denied.  However, because plaintiff's motion was

14   substantially justified I will not award any costs or attorneys

15   fees.

16        MS. HORWITZ:  Thank you, Your Honor.

17        THE COURT:  Okay.  So anything else?

18        MR. SAFRAN:  Judge, a few other things.

19        THE COURT:  Okay.

20        MR. SAFRAN:  Just so the Court is kind of aware as to

21   what's going on.  We are waiting for a ruling by Judge Clevert

22   that relates to the grand jury testimony that was elicited

23   before the criminal case was pursued in Federal Court.

24        THE COURT:  Okay.

25        MR. SAFRAN:  That may lead to other discovery, too.

1    We're also working with the District Attorney's Office in

2    Milwaukee County as far as trying to get, to confirm that we

3    have records that they have.  Just some disputes about that

4    that we're trying to get resolved.

5              So I just want the Court to be aware that we are

6    trying to move the discovery along as quickly as we can, but

7    we're just having these somewhat roadblocks in our way that

8    we're trying to overcome to continue along.

9              There is the plan on the plaintiff's part to file some

10   additional motions that relate to scope of employment and

11   liability.  My understanding in talking to the City Attorney

12   today, as I indicated to the Court, we are going to be amending

13   and bringing in an additional defendant, Ms. Belmore.  My

14   understanding from the city is that they will be, the defense

15   has been tendered to them which I understand they have agreed

16   to accept.

17             I also understand they have agreed to the fact that

18   she is limited to the scope of her employment, but there is an

19   issue as far as outside counsel representing her.  I don't know

20   if this is gonna be an issue that will ultimately have to come

21   before the Court.  The counsel that the city has chosen also

22   are the same counsel that represent another defendant in this

23   case, as well as who represented Mr. Blum in the motion the

24   Court just decided.

25             There is some concern on the plaintiff's part that

1   there might be conflicts of interest that could arise as a

2   result of if their firm represents multiple defendants in this

3   case relating to cross claims.  I understand the city wants to

4   wait and see the amended complaint that we file, which again we

5   hope to file today.  Maybe that will get flushed out and won't

6   need to be something that we address with the Court.

7          And then we will probably, I guess, hold off a little

8   bit longer on Officer Schabel, who's again one of the two

9   uniformed officers that first arrived at the scene.  He and Ms.

10  Belmore -- up to this point the city has taken the position

11  that Mr. Schabel was not in the scope of his employment at the

12  time the incident occurred.  But now I understand that they are

13  going to, at least the city is going to meet with counsel about

14  that to make a determination.

15         If that continues to be the case that they have argued

16  that he was not within the scope of his employment, we do

17  intend to file a motion for judgment on the pleadings relating

18  to liability and probably a summary judgment motion relating to

19  the scope of employment issue.  So we are going to go ahead and

20  file that, but I think we'll wait a little bit longer to see

21  what the city's response is in regard to that.

22         But those are additional motions we plan to file, and

23  maybe file regarding some of the other defendants, too, to see

24  if we can flush some of these issues out as this case proceeds

25  and that they certainly simplify this case as it proceeds

1   forward.

2         The other issue to bring in front of the Court again

3   goes back to Fifth Amendment issues that we have discussed.

4   The Court may be aware that three of the defendants who were

5   convicted, those would be Mr. Spengler, Mr. Masarik and Mr.

6   Bartlett, appealed to the Seventh Circuit.  The Seventh Circuit

7   decision came back indicating that their convictions were

8   affirmed.  The sentences were affirmed for Mr. Spengler and Mr.

9   Masarik, but as far as Mr. Bartlett it was sent back for

10   resentencing in front of Judge Clevert, and that's scheduled

11   for September 17th.

12         I have attempted to find out from Ms. Boyle, his civil

13   counsel, as to the position that she takes regarding the Fifth

14   Amendment issue.  Given the fact if he does not go back -- I'm

15   sorry, Your Honor.  To my understanding according to the

16   deadline, that the defendants have until September 7th to file

17   a petition with the U.S. Supreme Court regarding their

18   convictions, or the sentencing for the other two that have

19   already been affirmed.

20         I understand from defense criminal counsel for Mr.

21   Masarik is that he does plan to file with the U.S. Supreme

22   Court on issues relating to identification.  So I'm assuming

23   his Fifth Amendment issues are going to continue.

24         As far as Mr. Bartlett, I understand that he is

25   probably not going to petition regarding his conviction, but

1   the issue still is ongoing regarding his sentencing.  So we're

2   trying to find out from Miss Boyle whether or not she believes

3   that the Fifth Amendment after September 7th, if he doesn't

4   file his petition, whether that is somewhat waived, and maybe

5   we can go ahead and proceed with his deposition.

6         The other one is Mr. Spengler.  I have attempted to

7   find out from Mr. Spengler's counsel, his criminal counsel, as

8   to their position in moving forward.  And I received a fax

9   letter today, it was also copied to the Court.  I wanted in

10   anticipation of the hearing today to be able to advise the

11   Court of how we might proceed with those depositions, and asked

12   Mr. Kinstler, who is his criminal defense counsel --

13         THE COURT:  Yes, I got all that stuff.

14         MR. SAFRAN:  And difficult to know from his response

15   what we do, but our position would be after September 7th --

16         THE COURT:  You really need all these cops'

17   depositions?  I mean, this case is going to go on for 30 years

18   trying to get them to say boo.  Even if you got them to the

19   table they're not, I can't imagine they're going to say much to

20   help you.

21         MR. SAFRAN:  Well, with Mr. Spengler he's never

22   testified.  And, again, it was his badge that was stolen and he

23   kind of was the instigator of the whole thing.  So his

24   testimony certainly might be very, very important in this case.

25         THE COURT:  Yes, if he was willing to give any.

1      MR. SAFRAN:  Yeah.  And that's the question.  If, our

2 position would be we might bring a motion to compel discovery

3 as of, after September 7th.  If the position is that he has now

4 waived any Fifth Amendment --

5      THE COURT:  Well, I don't know.  You can bring

6 whatever motions you want.  I just think that this is a tough

7 row to hoe for you as a practical matter.  That's all.

8      MR. SAFRAN:  Well, it is.  And it's also compounded by

9 the fact that he is now pro se, where he has been pro se.  And

10 the question is how he responds, and I don't know.  That's why

11 I was trying to get Mr. Kinstler, his criminal defense counsel,

12 to give us some idea.

13      THE COURT:  Well, he gave you an idea; right?

14      MR. SAFRAN:  I guess that's right.  So that's another

15 issue.  Mr. Bartlett again will be coming back up here for his

16 resentencing on September 17th.

17      THE COURT:  Okay.

18      MR. SAFRAN:  If I can find out from Ms. Boyle whether

19 he still intends to assert his Fifth Amendment, we may want to

20 get his deposition scheduled while he's up here to avoid us all

21 having to go down to where he's incarcerated.

22      THE COURT:  I'm sure he'll be totally eager to

23 cooperate.

24      MR. SAFRAN:  Well, we'll see.  That's what I'm trying

25 to find out from Ms. Boyle at least.

```
1            THE COURT:  All right.

2            MR. SAFRAN:  So we may proceed with some of those

3    depositions, but we may be having to deal with some of the

4    Fifth Amendment issues again.

5            THE COURT:  Okay.

6            MR. SAFRAN:  Just so the Court is aware of that.

7            MS. HORWITZ:  Your Honor, just to, on that point with

8    Mr. Bartlett.  In the event there is an indication that he

9    would cooperate and provide a deposition, is it possible for us

10   to have a room here as we did with Mr. Harris?

11           THE COURT:  Absolutely.

12           MS. HORWITZ:  Okay.

13           THE COURT:  We'll do anything we can to facilitate any

14   depositions.

15           MS. HORWITZ:  All right.  Because I would anticipate

16   there would be a security issue with him being in custody.

17           THE COURT:  Yes.  No problem.

18           MR. SAFRAN:  Although I'm not sure if he would be

19   housed here.  He may only be housed here for a short time for

20   his resentencing and the rest of the time may be down in Racine

21   where the prisoners --

22           MS. HORWITZ:  Whatever.

23           MR. SAFRAN:  So we'll deal with that.  Appreciate

24   that.  I don't think there are any other issues to address

25   before the Court at this point, other than we'll just work on
```

1  the dates as far as extending those dates with a scheduling

2  order.

3          THE COURT:  Yeah.  Thank you.

4          MS. HORWITZ:  Thank you, Judge.

5          MR. SAFRAN:  Thank you, Your Honor.

6          (Morning proceedings concluded at 11:05 a.m.)

7                          *   *   *

8

9

10

11

12  UNITED STATES DISTRICT COURT

13  EASTERN DISTRICT OF WISCONSIN

14

15

16          I, Cynthia M. Bohman, RMR, Official Court Reporter

17  for the United States District Court, Eastern District of

18  Wisconsin, Milwaukee, Wisconsin, hereby certify that the

19  foregoing is a true and accurate transcript of my stenographic

20  notes taken in the foregoing proceedings.

21

22                           /s/ Cynthia M. Bohman

23                          Official Court Reporter

24

25  Dated this 8th day of September, 2009.