# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

FRANK L. JUDE, JR.,

                **Plaintiff,**

STATE OF WISCONSIN DEPARTMENT OF
JUSTICE CRIME VICTIM COMPENSATION
PROGRAM and WISCONSIN DEPARTMENT        **Case No. 06C1101**
OF HEALTH AND FAMILY SERVICES,

                **Involuntary Plaintiffs,**

      **v.**

CITY OF MILWAUKEE et al.,

                **Defendants.**

---

## DECISION AND ORDER

Plaintiff Frank Jude, Jr., filed this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Milwaukee ("the City") and several former City police officers: Andrew Spengler, Jon Bartlett, Daniel Masarik, Ryan Packard, Ryan Lemke, Jon Clausing, Joseph Schabel, Nicole Belmore, and Michele Roman.  Plaintiff's claims arise out of an October 24, 2004 incident in which the individual defendants severely beat and tortured him outside of defendant Spengler's home.  Plaintiff now moves for partial summary judgment against the City on the issue of whether it must indemnify defendant Schabel for damages that he may incur.  Schabel "joins" plaintiff's motion.

## I.  BACKGROUND

Schabel's involvement in the incident began when he was on patrol with his partner, defendant Belmore (then Nicole Martinez).  Just before 3:00 a.m., Schabel and Martinez received a dispatch regarding "trouble with a subject" at a nearby location, which turned out to be Spengler's home.  Spengler, a friend of Schabel's, was having a housewarming

party.  Schabel activated the emergency lights on his squad car and proceeded to Spengler's house.  Before the squad arrived, Lovell Harris flagged it down and stated that an altercation was in progress.

Upon arriving at the scene, Schabel parked the squad and approached a group of people in the street.  The group included off-duty officers, some of whom were Schabel's friends.  Members of the group were fighting with plaintiff, who was on the ground.  As Schabel approached, Spengler informed him that plaintiff had stolen his police badge.  Schabel knew that Spengler was deeply attached to his badge either because it had been worn by his grandfather or had the same number as his grandfather's badge.  Schabel became enraged and stomped on Jude's head two or three times.  He then identified himself as a police officer and attempted to arrest Jude for stealing Spengler's badge.

Schabel states that Jude resisted arrest.  In an attempt to stop the resistance, Schabel delivered a few "focused strikes" to Jude's right shoulder and kidney area.[1]  After delivering the strikes, Schabel, with the help of other officers, handcuffed Jude.  Before and after the handcuffing, other individuals kicked, punched and tortured Jude, and Schabel did not stop them.  Subsequently, the Police Department ("the Department") disciplined him for failing to safeguard a prisoner.

After placing Jude in a patrol wagon, Schabel remained at the scene.  Other uniformed officers arrived, and Schabel went into Spengler's house and talked to the off-duty officers who had assaulted Jude.  He and Martinez then prepared an incident report.

---

[1]A focused strike is a trained maneuver designed to prevent resistance by diverting a suspect's attention to the pain caused by the strike.

Subsequently, the Department's Internal-Affairs Division investigated the incident. Investigators interviewed Schabel, and he identified defendants Bartlett, Spengler, Masarik and Packard as the off-duty police officers who assaulted Jude, but he did not disclose that he himself had stomped on Jude's head. The State of Wisconsin charged Bartlett, Spengler and Masarik criminally, and Schabel testified against them but lied about his own misconduct. The state prosecution resulted in an acquittal. The United States ultimately charged Schabel, Bartlett, Spengler, Masarik and defendants Clausing and Lemke criminally. Schabel pleaded guilty, admitting to having stomped on Jude's head and obstructing justice by lying about his misconduct. Clausing and Lemke also pleaded guilty and testified against Bartlett, Spengler and Masarik, who were convicted of conspiring to violate Jude's civil rights.

In the present case, I granted plaintiff's unopposed motion for judgment on the pleadings against Schabel. However, my order left many issues unresolved, including the particular conduct that forms the basis for Schabel's liability, the amount of damages, and whether under state law the City must indemnify Schabel for damages awarded against him. In the present motion, both plaintiff and Schabel assert that indemnification is required.[2]

---

[2]Plaintiff may raise the indemnification issue, even though Schabel would be the party indemnified. See Fiala v. Voight, 93 Wis. 2d 337, 347-48 (1980) ("local governmental units not protected by the doctrine of sovereign immunity are susceptible to joinder as indemnitors").

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, I must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. See, e.g., Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 456 (7th Cir. 2010).

### B. Indemnification Under Wisconsin Law

Pursuant to Wis. Stat. § 895.46(1)(a), the City, as a political subdivision of the State, must defend and indemnify officers and employees sued "because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment." The issue presented is whether the acts that form the basis for Schabel's liability were committed within the scope of his employment.

> The doctrine of "scope of employment" is similar to that of respondeat superior:
>
> Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it inheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated.

Cameron v. City of Milwaukee, 102 Wis. 2d 448, 456 (1981) (internal quotation marks and citations omitted). The Cameron court also defined scope of employment to include "those

4

acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Id. at 457.

In addition to considering objective factors indicative of scope of employment, the court or jury must consider the employee's intent. "An employee may be found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer." Olson v. Connerly, 156 Wis. 2d 488, 499 (1990). Serving the employer need not be the employee's only or even his primary purpose. Id. However, "an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own)." Id. at 499-500; see also Graham v. Sauk Prairie Police Comm'n, 915 F.2d 1085, 1093 (7th Cir. 1990).

Importantly, an officer or employee who is found to have acted under "color of law" for purposes of Section 1983 is not necessarily entitled to indemnification. Cameron, 102 Wis. 2d at 456. "A finding with regard to action under 'color of law' is not identical to a finding that specific acts are done 'within the scope of employment' of a public official or employee." Id. The "under color of law" category is broader than the "scope of employment" category. Graham, 915 F.2d at 1093. Thus, Schabel is not entitled to indemnification simply because he has admitted to depriving Jude of his civil rights while acting under color of law.

5

**C.    Merits**

I may decide the scope-of-employment issue on a motion for summary judgment only if the facts are undisputed and permit but one result.  Graham, 915 F.2d at 1093 (citing Cameron, 102 Wis. 2d at 457-60, and Desotelle v. Cont'l Cas. Co., 136 Wis. 2d 13, 26-28 (Ct. App. 1986)).  The Seventh Circuit has cautioned against deciding whether an officer acted within the scope of employment before the facts bearing on the issue have been determined, and it has "warned repeatedly against trying to resolve indemnity before liability."  Doe v. City of Chicago, 360 F.3d 667, 672-73 (7th Cir. 2004).

In the present case, plaintiff and Schabel argue that the issue of indemnity is amenable to summary judgment because the undisputed facts establish that when Schabel violated Jude's civil rights, he was acting within the scope of his employment.  They stress that at all relevant times, Schabel was on duty and in uniform and that he was engaging in acts, including arresting Jude, searching Jude's car and filing an incident report, that were actuated, at least in part, by a purpose to serve his employer.  Nevertheless, for two reasons, I cannot resolve the indemnification issue at the present stage of the case.

First, the basis for Schabel's liability has yet to be established.  Plaintiff's claims against Schabel in his individual capacity (as opposed to his official capacity, which I discuss below) are based on two theories of liability under the Fourth Amendment: (1) that Schabel used excessive force when he stomped on Jude's head, and (2) that Schabel failed to intervene and prevent other officers from using excessive force.  These are distinct claims requiring proof of different elements. Compare Seventh Circuit Pattern Jury Instruction § 7.08 (listing elements of excessive force claim) with Seventh Circuit Pattern Jury Instruction § 7.16 (listing elements of failure to intervene claim).  It is conceivable that

6

Schabel acted within the scope of employment when and if he failed to intervene but not when he stomped on Jude's head. Moreover, the damages caused by these acts could differ. For these reasons, the scope of the City's liability for indemnification cannot be determined until plaintiff establishes whether Schabel's liability is based on his use of excessive force, his failure to intervene, or both.

Although Schabel admits using excessive force when he stomped on Jude's head, he disputes liability based on failing to intervene. (Schabel Answer [Docket #331] ¶¶ 36, 51.) When I granted plaintiff's motion for judgment on the pleadings against Schabel, I did not make any findings regarding Schabel's liability for failure to intervene. Indeed, before I granted the motion the parties expressly indicated that the judgment on the pleadings would not address Schabel's liability for failure to intervene. (See City's Letter of January 6, 2010.) Further, in his present motion, plaintiff does not move for summary judgment on the failure to intervene claim. To be sure, plaintiff at various points in his briefs asserts that neither the City nor Schabel could possibly survive a motion for summary judgment on this issue, but the fact remains that no such motion has been filed. Because no such motion has been filed, neither the City nor Schabel was obligated to file evidence showing that a reasonable jury could find in their favor on this claim. If in the future plaintiff files a proper motion for summary judgment on this claim, the City and Schabel may or may not be able to point to evidence in the record showing a genuine issue of material fact. In any event, the important point is that this is an issue that remains to be resolved, and until it is resolved I cannot decide whether the City is liable for indemnification. Doe, 360 F.3d at 672-73.

7

The second reason I cannot grant plaintiff's motion for summary judgment is that even if I put the failure to intervene claim aside and assumed that Schabel's liability to Jude is based entirely on his having stomped on Jude's head, the record reveals a genuine issue of material fact as to whether Schabel was acting within the scope of his employment when he performed this act. At his deposition, Schabel testified that when he responded to the dispatch regarding trouble at Spengler's house, he was acting as a police officer, but that when Spengler told him that Jude had stolen his badge, he "got extremely upset and . . . stomped on Mr. Jude's head twice." (Schabel Dep. at 76.) Schabel further testified, "Within a second I realized the huge mistake that I had just made, and I went into basically more or less police mode and attempted to effectuate an arrest." (Id. at 77.) When asked whether he acted within the scope of his employment, Schabel answered, "[A]ll except for one second" – meaning the second he stomped on Jude's head. (Id. at 201.) Schabel also testified that when he stomped on Jude's head he was motivated exclusively by outrage about the theft of Spengler's badge:

> Q:     And am I correct from your testimony that you stomped on Jude's head because you were angry because of what Mr. Spengler had told you about the fact that Mr. Jude allegedly stole his badge?
>
> A:     Yes.
>
> Q:     Any other reason you did it other than by being told that the badge was stolen by Mr. Jude?
>
> A:     No.

(Id. at 147.) Schabel also denied that stomping on Jude's head was part of an attempt to arrest Jude for stealing Spengler's badge. (Id. at 317.)

8

After considering the above testimony, a reasonable jury could conclude that while Schabel generally operated within the scope of his employment, he "stepped aside" from his employer's business in favor of his own desire for vengeance when he stomped on Jude's head, Olson, 156 Wis. 2d at 500, and that when he realized what he had done, he went back into "police mode." (Schabel. Dep. at 77.) Of course, a reasonable jury could also conclude that Schabel was acting within the scope of his employment the entire time.[3] But because the jury could reasonably conclude that Schabel was solely motivated by vengeance, I must deny plaintiff and Schabel's motion for summary judgment on the issue of indemnification.[4]

Before concluding, I address two other issues. The first is whether, as plaintiff contends, the City is strictly liable for any damages awarded against Schabel. This contention is based on Seventh Circuit dicta suggesting that municipalities should be held strictly liable for the acts of their police officers, even those not motivated by a desire to further the municipality's goals. See Doe, 360 F.3d at 671; West v. Waymire, 114 F.3d

---

[3]In this regard, I note that after Schabel testified that he was not acting as a Milwaukee police officer when he stomped on Jude's head, plaintiff's counsel asked follow-up questions and succeeded in getting Schabel to agree that he was acting as a Milwaukee police officer when he stomped on Jude's head. (Schabel Dep. at 201-02.) The jury could conclude from this testimony that Schabel was acting within the scope of his employment. But the jury could also choose to disbelieve this statement in light of Schabel's statements that he stepped outside of his duties when he stomped on Jude's head.

[4]In addition to arguing that summary judgment cannot be granted on the indemnification claims because the facts relating to scope of employment have not yet been established, the City argues that Schabel is not entitled to indemnification because he breached his duty to cooperate under Wis. Stat. § 895.46(1)(a) by lying to Internal Affairs about stomping on Jude's head. Because I have ruled in the City's favor on the scope-of-employment issue, I will not address its alternative argument based on Schabel's failure to cooperate.

9

646, 649 (7th Cir. 1997). However, in neither <u>Doe</u> nor <u>West</u> was the Seventh Circuit

applying Wisconsin law. The Wisconsin Supreme Court has not held that municipalities

are liable for torts committed by their police officers outside the scope of employment.

Rather, as explained above, it has ruled that Wisconsin's indemnification statute applies

only if an officer or employee's action was motivated at least in part by a desire to serve

the employer's goals. <u>Olson</u>, 156 Wis. 2d at 499-500. Because state law governs

Schabel's indemnification claim, I am bound by the state supreme court's holdings rather

than Seventh Circuit dicta in cases applying non-Wisconsin law. See <u>Pisciotta v. Old Nat'l</u>

<u>Bankcorp.</u>, 499 F.3d 629, 634 (7th Cir. 2007).

Plaintiff's remaining contention is that the Milwaukee City Charter requires the City

to indemnify Schabel even if he did not commit the acts at issue in the scope of his

employment. Plaintiff relies on Section 3-23 of the Milwaukee City Charter,[5] which

provides as follows:

> No officer of any city, no matter how organized, shall be required to file an
> undertaking, or any other bond required on appeal in any court when such
> party has been sued in his official capacity, except in actions of quo warranto
> or any other kind of action involving directly the title to his office, nor shall
> any city officer be liable for any costs or damages, but costs or damages, if
> any, shall be awarded against the city.

---

[5]The "Forward" to the Milwaukee City Charter provides as follows:

> The Milwaukee City Charter is a compilation of laws affecting the City of
> Milwaukee adopted by the Wisconsin Legislature and the Milwaukee
> Common Council. It contains the original 1874 charter and all amendments
> to it subsequently adopted. It also contains session laws adopted by the
> Legislature which affect the city but are not printed in the Wisconsin Statutes.

The Wisconsin legislature enacted Section 3-23 as a session law in 1913, but the
Milwaukee Common Council has never voted on it. See <u>Keller v. Kraft</u>, 281 Wis. 2d 784,
790-91 (Ct. App. 2005).

Plaintiff interprets Section 3-23 as requiring the City to indemnify any officer sued in his official capacity (as Schabel is here), even if he was not acting within the scope of employment.  (Reply Br. [Docket #395] at 8-9.)

Plaintiff misunderstands the nature of § 1983 official-capacity claims.  An official-capacity claim is not a claim against the officer but rather a claim against the agency that employs the officer.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Thus, plaintiff's official-capacity claim against Schabel is simply his Monell claim against the City.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978).  To prevail on a Monell claim, a plaintiff must prove that his injuries were caused by a policy, practice or custom maintained by the municipality.  Monell, 436 U.S. at 694-95.  Presumably, plaintiff will attempt to prove at trial that Schabel's acts were performed in accordance with a policy, practice or custom maintained by the City.  If plaintiff succeeds in doing so, then the City will be liable for plaintiff's damages directly and plaintiff will not have to rely on indemnification.  But if plaintiff does not succeed, then plaintiff's official-capacity claim will have failed, and plaintiff will be limited to his individual-capacity claims against Schabel – namely, the excessive force and failure to intervene claims at issue in the present motion. The Milwaukee City Charter does not require the City to pay damages for individual-capacity claims, and thus if plaintiff is to recover damages against the City in connection with such claims he must establish that indemnity is required under Wis. Stat. § 895.46(1)(a).

Schabel also argues that the City must defend him in the present case because both the City Charter and City Ordinances authorize the City Attorney to defend suits against officers, even if the underlying acts were not committed in the scope of

employment.  <u>See</u> Milwaukee City Charter § 3-06; Milwaukee City Ordinance § 350-213.

However, neither the Charter nor the ordinances <u>require</u> the City Attorney to defend

Schabel, and in this case, the City Attorney has declined to defend him.  Thus, if Schabel

is to recover his defense costs he must establish that he is entitled to indemnity under Wis.

Stat. § 895.46(1)(a).

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff and Schabel's motion for

partial summary judgment is **DENIED**.

Dated at Milwaukee, Wisconsin this 30 day of June, 2010.


/s_____
LYNN ADELMAN
District Judge